Harold T. Bryson, Appellant, *v.* Oxford Motorcycle Club, Inc., Appellee.

Argued October 11, 1974, before Judges CRUMLISH, JR., KRAMER and WILKINSON, JR., sitting as a panel of three.

*Ronald M. Agulnick,* with him *Agulnick, Talierco & McShane, Assoc.,* for appellant.

*R. Samuel McMichael,* for appellee.

OPINION BY JUDGE WILKINSON, November 19, 1974:

Appellee, having leased approximately 30 acres of land in an R-1 Residential District, applied to the zoning officer for a use and occupancy permit. Having been denied the permit, an appeal was taken to the Zoning Hearing Board. A public hearing was held at which time appellant came on the record by having his attorney enter his appearance. Subsequently, a stipulation and an order were filed designating appellant and his wife as intervenors. Appellee is a nonprofit corporation, the purpose of which was testified to be "to promote the recreational activity of motorcycle riding and to promote good public relations between the community and members."

If appellee is to qualify for a use and occupancy permit under the zoning ordinance, it seems to be agreed that it must do so by meeting the requirements of Section 400, either subsection (g) or subsection (i), which provides:

"(g)  club, fraternal institution or nonprofit swimming pool provided that a particular activity shall not be one which is customarily carried on as a business and provided that all services shall be for members and their guests.

"(i)  Non-commercial recreational use."

It is to be noted that Section 400 provides for those who qualify to be issued the permit as of right and not as a special exception.

The facts here are uncontested. The hearing before the Zoning Hearing Board appears to have been conducted in an able manner with a record of testimony of some 119 pages and a film which was shown to the Board and made an exhibit. The film is of a motocross which appellee had conducted at his former location in an adjoining township where the club had leased a tract of approximately 15 acres. The principal witness was the president of appellee who described the activities of the organization in a clear and candid manner as well as "narrating" the film. His testimony covers some 85 pages of the record. Another witness testified to the need for reconstruction of a former township road on the leased property as a track at a cost of approximately $3,555.00 and a parking area at a cost of about $2,000.00. Neither would have a paved surface, the cost representing merely grading and draining. Another witness testified as to the nature and structure of The American Motorcycle Association. This witness had been the official at the appellee's "big motocross" (presumably the one in the film) where he officated for 13 hours without stopping long enough to eat, having only a coke brought to him! He testified he could not predict with any accuracy how many people would enter each motocross, especially early in the season. Two witnesses testified that they lived within one thousand feet of the proposed site and did not object "to the proposed track." An apparently unsuccessful effort was made to secure a head count of the people who were present as to how many were in favor of and how many were against granting the permit. Several persons present "spoke up," some pro and some con.

The Zoning Hearing Board, in a well-reasoned and well-considered majority opinion, supported by appro-

priate findings of fact, affirmed the action of the zoning officer in refusing the permit and denied the application. One member of the Zoning Hearing Board dissented with a one-sentence statement that, in his opinion, under the facts, the applicant was entitled to the permit.

On appeal to the Court of Common Pleas, without taking any additional testimony and without making any new findings of fact or modifying any finding of fact made by the Board, the decision of the Board was reversed and the lower court directed the zoning officer to issue the permit. There was no opinion, as that term is normally used, other than the statement, "*See* Jones et al. v. Zoning Hearing Board, 7 Commonwealth Ct. 284 (1972)."

We conclude that the lower court found that the Zoning Hearing Board was supported by the record with its findings of fact but was in error on the law as set forth in the case cited. We disagree and must reverse the lower court.

Very briefly, the Board found from the testimony that the services of the Club were not restricted to members and their guests as required by Section 400(g), and that the activities proposed did not fall within Section 400(i) as a non-commercial recreational use. The majority frankly acknowledged that it was a difficult decision and "we found the Club itself has proposed a worthwhile venture and one that likely would be of benefit to our community."

We find no difficulty in affirming the conclusion of the Board that appellee did not qualify under Section 400(g). Surely if the term "guest," as used in this Section, has any meaning, that meaning must be more restrictive than to include any member of the public who happens by and wishes to participate in or be a spectator at one of the appellee's events.

The question of whether the Board was justified in concluding that the use proposed by appellee was not a

non-commercial recreational use is not as easily and clearly resolved. Nevertheless, after a careful review of the testimony, we must conclude that there is support in the record for its action. Therefore, the Board did not abuse its discretion in so finding. The testimony shows at least four events and possibly seven a year which appear to be the principal use of the property and which, for all practical purposes, are not only open to the public, but the attendance of the public is solicited. All entrants pay an entry fee and all spectators, numbering literally in the thousands, are asked to "donate" a dollar. The testimony of appellee reveals that tickets are issued to those donating, so that a record of the number present may be kept. Surely, this means that all, or substantially all, who attend donate.[1] Much emphasis is placed by appellee on the fact that it is a nonprofit corporation. No citation of authority is needed to establish that a nonprofit corporation can engage in a commercial activity.

*Jones et al. v. Zoning Hearing Board et al.*, 7 Pa. Commonwealth Ct. 284, 298 A. 2d 664 (1972), is not controlling. In that case, the Zoning Hearing Board and the court below granted the special exception for the tennis club, having found that it was not "an activity customarily carried on as a business." We affirmed the Board. There, as here, the lower court did not take additional testimony. Our scope of review was limited there, as it is here, to determine if the Board abused its discretion based on the record. We found there, as we find here, based on the record, that the Board did not abuse its discretion. While not controlling, it is worth noting that in *Jones, supra,* there was no evidence of thousands of spectators donating admis-

---

[1] One witness testified, in response to a question of whether donations were required, "We have had spectators come in and not pay and we don't beat them up."

sion charges of a dollar to view the tennis. Indeed, there was no evidence of any participation other than by members.

Appellee presents the rather novel argument that since it raised the question of the constitutionality of the zoning ordinance before the Zoning Hearing Board, and the Board's opinion did not discuss and expressly resolve that argument, then it must be deemed to have found in its favor under the 45-day rule, Section 908(9) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. 805, *as amended*, 53 P.S. §10908 (9). This rule requires the Zoning Hearing Board to *render a decision* within 45 days, not to answer every argument. The decision in this case was rendered within 45 days, i.e., the application was denied. On the constitutionality issue of whether the result of the zoning officer's and the Zoning Hearing Board's decision is an impermissible exclusion of this commercial recreational activity from every place in the township, appellee applied in an R-1 Residential Zone as a non-commercial recreational use. It did not apply as a commercial use in a commercial zone. Until and unless it does, it is not in a position to raise the constitutional question.

The order of the court below is reversed and the decision of the Zoning Hearing Board, denying the application for the use and occupancy permit, is reinstated.